IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LISA GOLDSCHMIDT,                                 :

              Plaintiff,

       -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.                         :

Case No. 3:12-cv-132

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

# REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

2In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.   42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.   With

respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to

the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI in March, 2007, and an application for SSD on June 20, 2007, alleging disability from September 15, 2005, due to arthritis, back pain, headaches, and gall stones. See PageID 191-203, 204, 218. The Commissioner denied Plaintiff's application initially and on reconsideration. PageID 123-40, 145-50. Administrative Law Judge David Redmond held a hearing, PageID 98-121, following which he determined that Plaintiff is not disabled. PageID 71-95. The Appeals Council denied Plaintiff's request for review, PageID 64-66, and Judge Redmond's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Redmond found that she met the insured status requirements of the Act through September 30, 2005, but not thereafter. PageID 73, ¶ 1. Judge Redmond also found that Plaintiff has severe mild vertebral disorder and mild degenerative joint disease of the lumbar spine, a vertebral disorder of the cervical spine with residuals of surgery, hepatitis C, cirrhosis, dysthymic disorder, and personality disorder with a strong history of drug and alcohol addiction now supposedly in remission, but that she did not have an impairment or combination of impairments that met or equaled the Listings. *Id.,* ¶ 3; PageID 75, ¶ 4. Judge Redmond found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. PageID 76, ¶ 5. Judge Redmond then used section 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 88, ¶¶ 9, 10. Judge Redmond concluded that Plaintiff is not disabled and

4

therefore not entitled to benefits under the Act. PageID 89.

Plaintiff sought emergency room treatment on July 28 and again on July 30, 2003, for complaints of headaches. PageID 301-21. Plaintiff's health care providers identified Plaintiff's diagnosis as cephalgia and Plaintiff was treated with medications and released. *Id.*

Plaintiff was hospitalized March 23-24, 2007, because of a history of thrombocytopenia and alcohol abuse. PageID 322-43. During that hospitalization, Plaintiff was placed on alcohol withdrawal protocol and was also treated for knee pain, hip pain, hypertension, and a urinary tract infection. *Id.*

Plaintiff sought emergency room treatment on April 20, 2007, for complaints of right knee pain and on April 22, 2007, for complaints of left knee pain. PageID 344-50; 351-57. Plaintiff was treated and released. *Id.*

Plaintiff was hospitalized June 21-27, 2007, and underwent a laparoscopy which revealed chronic cholelithiasis and marked cirrhosis which was "so significant the gallbladder could not be enucleated from the hepatic bed." PageID 361-71. Plaintiff subsequently underwent a cholecystectomy by way of traditional incision, she tolerated the procedure well, and was discharged . *Id.*

Plaintiff was hospitalized September 14-19, 2007, after seeking emergency room treatment complaining of tremors, ataxia, and slurring of speech. PageID 373-421. At the time Plaintiff was admitted to the hospital, it was noted that she had a history of substance abuse and hepatitis C, she drank four to ten alcoholic beverages a day, she was alert and oriented, and that she had tremors which were greater on the right upper extremity than on the left. *Id.* Plaintiff's objective test results were consistent with liver disease, alcohol abuse, and hepatitis C. *Id.* Plaintiff was treated and

discharged with the diagnoses of pancytopenia, chronic liver disease, cerebellar atrophy, alcohol dependence, ataxia, depression, and hepatitis C. *Id.*

Plaintiff saw a counselor at Crisis Care on October 2, 2007, for treatment of alcohol dependence. PageID 597-606. At that time, it was recommended that Plaintiff pursue residential treatment. *Id.*

Plaintiff was hospitalized October 16-19, 2007, for treatment of alcohol withdrawal. PageID 466-73. Plaintiff was treated with medications and discharged with the diagnoses of alcohol dependence, continuous, alcohol withdrawal syndrome, macrocytic anemia, history of depression, and alcoholic liver disease. *Id.*

Treating psychiatrist Dr. Coleman reported on November 5, 2007, that Plaintiff was not significantly to moderately limited in her abilities to perform work-related mental activities, that her diagnoses were anxiety disorder NOS and dysthymic disorder, she was unemployable, and her mental functional limitations were expected to last for between thirty days and nine months. PageID 607-08.

Plaintiff was hospitalized January 14-16, 2008, after exhibiting confusion, inability to walk, and grogginess. PageID 474-515. At the time Plaintiff was admitted to the hospital, it was noted that she had taken several of her psychiatric medications. *Id.* Plaintiff was treated with medication, her symptoms resolved, she became lucid, alert, and oriented, and she was discharged with the diagnoses of hepatic encephalopathy secondary to drugs or side effects to several medications, hepatitis C, alcoholic cirrhosis, migraine headache, anxiety, questionable depression, drug-induced mood disorder, and thrombocytopenia. *Id.*

The record contains a copy of Plaintiff's mental health treatment notes from Day-Mont

West dated December 27, 2007, to January 11, 2010. PageID 518-35; 712-51; 1096-1132. Those records reveal that when Plaintiff was first evaluated at Day-Mont, her diagnoses were identified as anxiety disorder NOS and alcohol dependence in early remission and she was assigned a GAF of 61. *Id.* It was also noted that Plaintiff began to use alcohol at age fifteen, had abused drugs throughout her adult life, that she had a downcast affect, racing thoughts, poor concentration, and that she had recently been discharged from a sixty-day program for alcoholism. *Id.* Plaintiff received counseling from a mental health therapist and a psychiatrist monitored Plaintiff's medications. *Id.*

Examining psychologist Dr. Olson reported on March 4, 2008, that Plaintiff had been receiving out-patient treatment at a mental health center since January, 2008, for alcohol and drugs as well as depression, had never been hospitalized for mental health reasons, had received inpatient drug and alcohol treatment at NOVA House from October to December, 2007, had started using alcohol at fifteen years of age, drank for "most of [her] life", began using marijuana at age fifteen, and that she has used crystal meth, opioids, and heroin. PageID 537-42. Dr. Olson also reported that Plaintiff's speech was logical, topic directed, and slightly slurred, her attention and concentration were fair, her affect was flat and her mood seemed depressed, down, resigned, and lethargic, she displayed no overt autonomic signs of anxiety, she appeared somewhat sleepy, drugged, or medicated, and that she displayed no evidence of a thought disorder. *Id.* Dr. Olson noted that Plaintiff was oriented, seemed to have slight difficulty with memory skills, her insight and judgment seemed adequate at most times, but might be impaired at times due to alcohol and drug usage, and that a third-party payee would be necessary to manage any funds granted in her name. *Id.* Dr. Olson identified Plaintiff's diagnoses as dysthymia, alcohol dependence in reported

7

early full remission, amphetamine dependence in sustained full remission, opioid dependence in sustained full remission, and personality disorder NOS with borderline features. He assigned her a GAF of 56. *Id.* Dr. Olson opined that Plaintiff's abilities to relate to others, to maintain attention, concentration, persistence, and pace, and to withstand the stress and pressures associated with day-to-day work activity were moderately impaired, and that her ability to understand, remember, and follow instructions was mildly impaired. *Id.*

Examining physician Dr. Danopulos reported on May 13, 2008, that Plaintiff reported bilateral knee pain, left hip pain, pain in her entire spine, had hepatitis C, and had been depressed for her entire life, that she quit drinking six months ago, had been rehabilitated twice, has used heroin and painkillers and stopped using them six years ago, and that she had a twelfth grade education. PageID 566-75. Dr. Danopulos also reported that Plaintiff had painful but normal motions of both knees and an unsteady gait, that her cervical and lumbosacral spines were painful to pressure, her cervical spine motions were slightly restricted, and that her deep tendon reflexes were highly exaggerated bilaterally in the upper and lower extremities. *Id.* Dr. Danopulos noted that Plaintiff's right knee x-rays were normal and that the objective findings were bilateral knee arthralgias, left hip neuralgias, cervical spine status post fusion in the past with restricted motions and chronic arthralgias, lumbar spine arthralgias, history of hepatitis C with low albumin levels and three-finger hepatomegaly and depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities was affected in a negative way from her cervical spine chronic pain status post fusion plus her hepatitis C with three finger hepatomegaly and disturbed liver functions and her unsteady gait which is triggered from her long continued alcohol abuse. *Id.*

Plaintiff underwent several x-rays on June 20, 2008. Lumbar spine x-rays revealed mild

8

lumbar spondylosis within the lower lumber spine and very subtle Grade I anterolisthesis of L4 upon L5. PageID 585. A chest x-ray revealed increasing interstitial markings at both lung bases which could be due to a mild interstitial edema or atypical infiltrate. PageID 586. A left knee x-ray revealed mild medial compartment osteoarthritis. PageID 587.

Plaintiff was hospitalized June 4-15, 2008, after displaying a mental status change. PageID 613-61. It was noted at the time of her admission that Plaintiff had admitted to using Methadone, Percocet, and cocaine. *Id.* Plaintiff was initially maintained on the ventilator for acute respiratory distress syndrome secondary to aspiration pneumonia and treated with medications. *Id.* Plaintiff was discharged with the diagnoses of acute respiratory distress syndrome secondary to aspiration pneumonia, hepatitis, and polysubstance abuse. *Id.*

The record contains a copy of treating pulmonologist Dr. Reddy's office notes dated August 25 to September 17, 2008, and which reveal that Dr. Reddy treated Plaintiff for status post pneumonia. PageID 662-72.  Dr. Reddy reported on September 17, 2008, that Plaintiff was "doing reasonably well" and he essentially discharged her from his care. *Id.*

The record contains copies of Plaintiff's emergency room treatment notes dated November 8, 2007, to January 14, 2009. PageID 673-710. Those records reveal that Plaintiff received emergency room treatment for various complaints and medical conditions including urinary tract infection, abdominal pain, COPD, acute bronchitis, left lumbar strain with spasm, and lumbago. *Id.* Additional emergency room treatment notes dated November 8, 2007, through January 14, 2009, reveal that Plaintiff received treatment for urinary tract infections, shortness of breath, bronchitis, and back pain. PageID 832-937.

The record contains a copy of Plaintiff's physical therapy treatment notes dated October

9

24, 2008, through February 17, 2009. PageID 752-64. Those notes reveal that Plaintiff received physical therapy treatments for complaints of back pain that extended into her left hip and knee. *Id.* Plaintiff stopped attending physical therapy after her December 15, 2008, visit and she was discharged. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Community Health Centers of Greater Dayton and Good Samaritan Hospital Ambulatory Care dated October 1, 2007, through February 24, 2009. PageID 765-98. Those records reveal that Plaintiff was treated at that facility for various medication conditions including hepatitis C with advanced liver disease, degenerative joint disease, depression, anxiety, back pain, knee pain, alcohol abuse, sinus infection, and migraine headache. *Id.*

The record contains Plaintiff's treatment notes from the Gastrointestinal & Liver Disease Consultants dated July 9, 2008, to June 24, 2009, where Plaintiff received treatment from Dr. Gupta. PageID 799-830; 938-51. Those notes reveal that in August, 2008, Plaintiff's EGD was normal and that Dr. Gupta determined to delay Plaintiff's treatment for hepatitis C due to her other medical conditions and substance abuse history. *Id.* In December, 2008, Plaintiff reported that she had not used any illicit drugs since June and had been away from alcohol for one year, and it was determined that Plaintiff would begin hepatitis treatment after the appropriate clearances were completed. *Id.* Dr. Gupta noted on June 1, 2009, that Plaintiff's diagnoses were hepatitis C failed combination Interferon-Ribavirin therapy, minimal encephalopathy, and status post cholecystectomy and that her physical examination was unremarkable with the exception of mild cognitive difficulties. *Id.*

The record contains a copy of Plaintiff's treatment notes from Miami Valley Hospital dated

March 18 to July 24, 2009, and which included notes from inpatient hospitalizations and emergency room visits. PageID 953-1057; see also PageID 1058-85. Those notes reveal that Plaintiff was hospitalized for treatment of hyperammonemia, hepatic encephalopathy, and meth use, and she received emergency room treatment for hyperammonemia, petechiae to the left foot rule out deep vein thrombosis, confusion, hyperalbuminemia, weakness, fatigue, and rectal bleeding. *Id.*

The record contains Plaintiff's treatment notes from the Miami Valley Hospital Berry Center dated June 7 to October 25, 2009. PageID 1086-94. Those records reveal that Plaintiff received treatment for various medical conditions including lower extremity edema likely due to venous insufficiency, vitamin B-12 deficiency, cirrhosis of the liver, hepatitis C, thrombocytopenia, anxiety, depression, headache, tobacco abuse, thoracic spine pain, shortness of breath, malaise, and fatigue. *Id.*

Plaintiff was hospitalized January 20-23, 2010, after seeking emergency room treatment for somnolence for a few days. PageID 1136-72. Plaintiff's admitting diagnoses were altered mental status secondary to hepatic encephalopathy, possible pneumonia, hepatitis C cirrhosis, anemia, back pain, thrombocytopenia, and depression/anxiety. *Id.* Plaintiff was treated with medications and discharged with the diagnoses of altered mental status resolved, pneumonia resolved, hepatitis C cirrhosis stable, anemia stable, back pain stable, thrombocytopenia stable, and depression/anxiety stable. *Id.*

Plaintiff was referred to U.C. Gastroenterology on February 1, 2010, for liver transplant evaluation. PageID 1173.

Plaintiff was hospitalized March 9-12, 2010, following treatment in the emergency room

for increasing back pain, fatigue, and somnolence. PageID 1174-97. Plaintiff's admitting diagnoses were hepatic encephalopathy and mental status change and she was treated and released. *Id.*

The record contains additional emergency room treatment notes dated March 29, and June 8, 2010. PageID 1198-1243. Those notes reveal that Plaintiff was treated in the emergency room on March 29 for complaints of headache and being weak and sleepy and she was treated and released. *Id.* On June 8, 2010, Plaintiff received emergency room treatment for complaints of left knee pain and she was treated and released. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to find that she is disabled by her cirrhosis and by her mental impairments. Doc. 7.

In support of her first Error, Plaintiff argues that the Commissioner improperly weighed the evidence related to her cirrhosis/liver disease. Plaintiff's argument seems to be that she is disabled because she has cirrhosis/liver disease.

In determining that Plaintiff is not disabled, Judge Redmond found that Plaintiff has cirrhosis/hepatitis/liver disease which have resulted in some exertional limitations, but that those impairments did not result in total disability. See PageID 80-85. Specifically, Judge Redmond noted, *inter alia,* that although Plaintiff alleged an onset date of September, 2005, she did not receive any treatment for her liver impairment until May, 2009, that she complained of fatigue infrequently, and that her condition was stable after she started treatment in 2009. *Id.*

Of course, the presence of a diagnosis alone is never conclusive evidence of disability. See *Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir.

12

1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.*

Judge Redmond's conclusion that Plaintiff is not disabled by her liver impairment is supported by the record. Judge Redmond accurately described the evidence upon which he relied to conclude that Plaintiff is not disabled. For example, while the record indicates that Plaintiff's diagnosis of liver disease has been long-recognized, she did not begin specific treatment until May, 2009, when she began taking Lactulose. See PageID 1014-15. As Judge Redmond essentially noted, that was long after her alleged onset date of September, 2005. In addition, the record reveals that after Plaintiff started taking Lactulose in May, 2009, her health care providers noted that her condition was stable and she had few complaints of fatigue. See, *e.g.,* PageID 955-63; 980; 1135-38. Finally, the Court notes that examining physician Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was, at worst, "affected in a negative way". However, no other physician of record, including Plaintiff's treating physicians, opined that Plaintiff is disabled or even limited in her physical abilities as a result of her liver impairment.

Plaintiff relies on several medical notations in support of her position that she is disabled. However, the question in a Social Security case is not whether the evidence supports Plaintiff's allegations of disability, but rather whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *See*, *Perales, supra.*

Under these facts, the Commissioner did not err by failing to find that Plaintiff is disabled by her cirrhosis/hepatitis/liver impairment.

Plaintiff argues in support of her second Error that the Commissioner erred by failing to find that she is disabled by her mental impairments.

13

In concluding that Plaintiff is not disabled by her mental impairments, Judge Redmond noted that Plaintiff had not started to receive mental health treatment until almost two years after her alleged onset date, that the records from Nova House and Day-Mont revealed normal mental exams, her mental health treatment providers consistently assigned her GAF scores that indicated, at worst, moderate symptoms, and that Plaintiff's activities were inconsistent with her allegations. See PageID 82-86.

As Judge Redmond noted, Plaintiff's treatment notes from Nova House as well as Day-Mont reveal that Plaintiff's care providers at those facilities noted primarily normal findings. See, *e.g.,* PageID 518; 715-17; 720-22; 731; 734-38; 1096; 1104-08; 1116-17. In addition, Plaintiff's mental health care providers as well as the examining psychologist consistently assigned Plaintiff GAF scores that indicated, at worst, a moderate impairment. See, *e.g.,* PateID 531 (GAF 61); 542 (GAF 56); 596 (GAF 60); 610 (GAF 60/70); 748 (GAF 61); 1127 (GAF 61). Further, Plaintiff's treating psychiatrist opined in November, 2007, that any limitations Plaintiff had as a result of her mental impairment were expected to last only between thirty days and nine months. PageID 608. Finally, Plaintiff's self-reported activities are inconsistent with her allegations of being totally disabled. For example, Plaintiff has been attending college classes since April, 2008, she lives alone and cooks, cleans, shops, does laundry, takes public transportation, socializes with others, reads, attends AA meetings,  takes care of her boyfriend, a cat, fish, and her neighbor's dog, watches television, and attends church. PageID 103; 106; 231; 539.

Under these facts, the Commissioner did not err by failing to find that Plaintiff is disabled by her alleged mental impairments.

14

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 29, 2012                                       *s/ Michael R. Merz*
                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).